1. EXECUTORS AND ADMINISTRATORS (§ 506*)—ACCOUNTING—BURDEN OF PROOF.

Where a husband and wife, on renting a safe deposit box as joint tenants, either to have free access at all times, signed a contract that on the death of either the survivor was to have access to the box, and either to have power to appoint a deputy, and where the account of the wife, as administratrix of her husband, was questioned because she failed to charge herself with securities which were found in such box at his death and were in his name when deposited, the burden was on her to prove that she became entitled to such securities on her husband's death.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2169–2177; Dec. Dig. § 506.*]

2. GIFTS (§ 11*)—WILLS (§ 1*)—VALIDITY.

A person cannot by parol, without complying with the law of gifts or of wills, make securities or other instruments for the payment of money the subject of a voluntary disposition to take effect on his death.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 9; Dec. Dig. § 11;* Wills, Cent. Dig. § 1; Dec. Dig. § 1.*]

3. EXECUTORS AND ADMINISTRATORS (§ 465*) — ACCOUNTING — HUSBAND AND WIFE.

Where a husband and wife, on renting a safe deposit box as joint tenants, with free access thereto at all times, sign a contract that, on the death of either, the survivor shall have access to the box, either to have power to appoint a deputy, the wife, as administratrix of the husband, must account for corporate securities which are found in the box at his death, and which were owned by him when deposited.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1990–1992; Dec. Dig. § 465.*]

4. EXECUTORS AND ADMINISTRATORS (§ 506*)—ASSETS—PRESUMPTION.

A stock certificate standing in decedent's name, and produced by his wife as his administratrix, presumably came into the administratrix's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

hands after her husband's death, and must be accounted for as part of his estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2169–2177; Dec. Dig. § 506.*]

Judicial settlement of the account of Mary E. Brown, as administratrix of the estate of James L. Brown, deceased. Decreed according to opinion.

Greene, Hurd & Stowell, of New York City (Richard T. Greene, of New York City, of counsel), for administratrix.

Joseph N. Tuttle, of Newark, N. J., for contestants.

KETCHAM, S. The account of the administratrix is questioned upon the ground that she has not therein charged herself with securities which are said to have belonged to her husband, the intestate. These securities were found in a deposit safe or box which was rented under a written contract signed by both the husband and the wife, containing the following:

"We agree to hire and hold safe No. —— as joint tenants, the survivor or survivors to have access thereto in case of death of either; but either to have power to appoint a deputy."

The contract provided that either should have access to the safe at all times.

The contents of the box at the death were: Certificates of stock issued in the name of the intestate, and now remaining without assignment, worth $98,669.54; corporate bonds, with coupons, unregistered, and payable to bearer, worth $13,881.62; a certificate for 250 shares of stock, which was the property of the wife.

All the stock described, supra, as standing in the name of the intestate belonged to him when deposited. Some of the bonds are conceded to have belonged to him. As to the remainder of the bonds, there is no proof directly of their original ownership by either party. The wife offers no claim or proof that they even belonged to her by gift or purchase from anybody not her husband, and from her silence on the subject it must be found that she never acquired them from a stranger. That before their deposit she owned them by his gift or assignment or by acquisition from another is forbidden by her present claim and the grounds to which it is limited. It is said in her behalf that she "does not claim the contents of the box by reason of a gift inter vivos or causa mortis, but by right of survivorship." The conclusion must be that all the securities mentioned belonged to the intestate when they were put into the safe, except the stock known to belong to the administratrix personally. It is also claimed that the certificate of stock not found in the box, but produced by the administratrix during this proceeding, belongs to the estate. This is a certificate of stock of the Norfolk & Western Railroad Company, which stands in the name of the decedent.

[1] The administratrix seeks to deduce, from the transaction concerning the safe, the deposits therein, and the circumstances which gave character to those acts, that she became entitled, upon the death of her

husband, to the securities in the safe which were originally owned by him. Upon the controversy thus presented, she has the burden of proof. Matter of Cozine, 113 App. Div. 22, 98 N. Y. Supp. 1041, and cases cited. While in the case cited the demand was upon an alleged debt of the decedent, the reason of the rule seems equally applicable to a claim for property known to have once belonged to the decedent.

[2] The administratrix cannot be awarded the property unless her right thereto can be found in the written contract. While the relations of the parties, the declarations of the husband, the history and nature of the deposits, and all the qualifying circumstances are important, if found material, to explain and characterize the writing, they cannot be themselves the source of her claim. It is not conceivable that one may by parol make a chattel owned by him the subject of a voluntary disposition to take effect upon his death, unless he conforms to the law of gifts or the law of wills.

Securities or other instruments for the payment of money are chattels, however valuable they may be beyond their visible and ponderable quality. Securities, no less than coin, being incapable of gift without delivery, any arrangement for their disposition upon the death of the owner, which is not evidenced by will, delivery, or some form of written convention, must fail. In the cases of bank deposits and investments, there has always been a written evidence of the chose in action and not the concrete money deposited or invested which has been made the subject of survivorship, and then only upon the written evidence, in the form of the deposit or investment, not merely that the husband wanted the wife to take the fund but that she was by him made the payee in case of her survivorship. No benevolence of the husband, however intense in feeling or vociferous in expression, will be of legal value if the wife is not legally given the potential right of disposition in case of his death.

[3] The inquiry then reverts to the construction of the lease which both parties signed. It has not been possible to find that this was anything more than an agreement to hold the box together and to permit access thereto by each other. The declaration of the husband that "what is yours is mine, and what is mine is yours," is too much like the amiable nullity which the husband addresses to the bride at the altar, "With all my worldly goods I thee endow." The one imparts to the ceremony an idle charm which the other carries into the trials of life, but neither has enough of precision and active intention to alter rights of property.

[4] The stock certificate which is produced by the accountant, but not from the box, stands in the decedent's name. This production, together with this appearance of ownership in the husband, presumptively indicates that it came into the hands of the administratrix after the death of her husband, and it must therefore be accounted for as of his estate.

The claim of the accountant to the certificate last mentioned and to the securities which once belonged to the intestate, and which were found in the box, must be rejected, and the account must be settled accordingly.

Decreed accordingly.